JOSIAH ALLIS *vs.* ISRAEL BILLINGS & others.

The validity of a conveyance of real estate being controverted, and an action brougnt by the grantor for the recovery thereof, on the ground that the same had been obtained from him while in a state of insanity, the action was referred by a rule of court to the determination of arbitrators, who proceeded to hear the parties: The grantor, by his guardian, introduced evidence to show that he was insane at the time of the conveyance, and the grantee introduced evidence to contradict this evidence on the part of the grantor: A compromise was then effected between the grantee and the guardian of the grantor, without any intervention on the part of the latter, or any fraud on the part of the guardian, one of the terms of which was the giving of a promissory note (which was given accordingly) by the grantee to the grantor: In an action on the note, it was held, that, in the absence of fraud on the part of the guardian in effecting the compromise, the grantee could not defend against the note by showing that the conduct of the grantor, which was relied upon and of which evidence was given to prove his insanity, was feigned by him for the purpose of being so used as evidence; that this fact was wholly unknown to the grantee when he agreed to the compromise; that the compromise was effected by means of such fraudulent proceeding on the part of the grantor; and that a material part of the evidence tending to prove such fraud had been discovered by the grantee since the commencement of the suit on the note.

THIS action was brought by the plaintiff, by his guardian, Daniel Wells, on a promissory note for $3199·22, dated August 14th, 1844, and signed by the defendant, Billings, as principal, and the other defendants as his sureties. On the back of the note were the following indorsements : " August 14th, 1844, Received by allowance of services as agent for Allis fifty dollars ; " and " Dec. 18th, 1845, Received on the within note ninety-eight dollars."

The defendants admitted the execution of the note, and then made the following statement of facts, the truth of which was admitted by the plaintiff.

The plaintiff brought a writ of entry, on his own behalf, against the defendant, Billings, and entered the same in this court, at the April term, 1843, for this county, for the recovery of certain real estate conveyed by him to Billings, in the year 1835, while the plaintiff was alleged to be insane. The action was tried at the same term, and a verdict rendered therein for the plaintiff. Exceptions were filed by the defendant, upon which the verdict was set aside, and a new trial ordered, for the reasons stated in the report of the case in the sixth volume of Metcalf's Reports.

The plaintiff soon afterwards brought a second action against the same defendant, for the recovery of another tract of land, alleged to have been conveyed under similar circumstances, and entered the action in this court at the September term, 1843.

In the summer of 1843, Daniel Wells was duly appointed guardian of the plaintiff, as an insane person, and appeared in his behalf in both actions, at the September term, 1843.

At the April term, 1844, both actions were referred, by a rule of court, to the same arbitrators, who proceeded to hear the parties in the month of August next following. After the evidence for the plaintiff had all been introduced, and the defendant had called and examined some of his witnesses, one of the arbitrators, in the presence of the others, suggested that there should be a compromise between the parties.

Allis *v.* Billings & others.

The parties thereupon withdrew, and, after conferring together, agreed upon a settlement and compromise, the terms of which were : — that each party should pay his own costs ; that the conveyances from Allis to Billings should be treated as void ; that Billings should reconvey to Allis such of the real estate as remained unsold by him, and should account for the proceeds of such parts of the real estate as he had made sale of, and for the rents and profits which he had received from the lands ; that all the notes given by Billings to Allis, for the conveyance made to Billings by Allis, should be given up and cancelled ;. that the sales made by Billings should be ratified and confirmed by Allis ; and that Billings should be allowed the sum of fifty dollars for his services, in negotiating the sales and taking care of the estate. The parties also agreed, that the amount of the rents and profits should be ascertained and settled by arbitrators agreed upon by them, and the amount was so ascertained and determined accordingly.

These stipulations were all complied with by the parties, and the note in suit was then given for the balance found due from Billings to Allis according to the terms of the compromise. This settlement was effected, on the part of Allis, by his guardian, and without any intervention by him personally.

The second indorsement on the note was for money paid by the defendant's son ; but there was evidence in the case to show, that the defendant had himself promised to pay the note.

The question, on which evidence was introduced at the hearing before the arbitrators, was, whether the plaintiff was insane at the time of the conveyance to Billings.

The foregoing statement being agreed to by the plaintiff, as already stated, the defendant thereupon offered to prove the following additional facts : —

That the plaintiff, during the winter of 1834 – 5, for several months before making the conveyance to the defendant, and with a view to effecting a different purpose, feigned himself

to be insane, and adopted a course of conduct calculated to lead to a belief that he was so ;

That, in the actions brought against the defendant to recover the lands conveyed to him by the plaintiff, this feigned conduct constituted a material part of the evidence adduced by the plaintiff, and was used by him in the trial of the first suit in this court, before the appointment of a guardian ;

That, subsequently to the trial in this court, but long previous to the hearing before the arbitrators, the plaintiff, knowing himself to be sane, but with an intent to influence and affect the causes then depending between him and the defendant, consented to the appointment of a guardian over himself, as an insane person, and suffered himself to be defaulted on the petition and application to the probate court for such appointment, and gave such consent and suffered such default, upon an agreement and understanding with the persons making such application, that the guardianship should be removed and discharged, whenever the cases against the defendant should be terminated ;

That, in pursuance of such purpose, the plaintiff continued to feign insanity whilst the suits were pending, with a view that his conduct should be used on the trial thereof, as evidence of his insanity ;

That the plaintiff was not present, and did not take any part in the settlement and compromise, but that certain persons, confederating with him, and fully conversant with the fraud which he was practising, and interested in the event of the suits pending, by means of an agreement with him that they might carry on the same and have as their own one half of whatever might be recovered, did, as his friends, confer and consult with his guardian, during the time the latter was negotiating, arranging and completing the settlement and compromise ;

That, while the plaintiff was under guardianship, the same was treated as a matter of form merely, the plaintiff being permitted to manage his affairs, and the guardian taking a bond of indemnity from the plaintiff's friends, against any

loss resulting from the proceedings of the plaintiff, while acting under such permission;

That, under the pressure of the evidence adduced against him at the hearing before the arbitrators, the defendant was induced to enter into the settlement and compromise above mentioned, and to sign and give the note which is the subject of this action;

That the fraud of the plaintiff, in feigning himself to be insane, for the purpose, intent and design already stated, was wholly unknown to the defendant, when he agreed to the compromise, and gave the note in question, and that a material part of the evidence tending to prove such fraud had been discovered by him since the commencement of the present suit.

In making the offer to prove the above recited additional facts, the counsel for the defendant stated and admitted, that the defendants did not offer, nor, if such facts were allowed to be shown in evidence, did they expect or intend upon the trial to offer, any evidence tending to show that the plaintiff's guardian participated in any of the alleged fraudulent conduct of the plaintiff, or had any knowledge that any of his conduct was feigned, or that any representations were made by him or any other person to procure the settlement and compromise, other than what appeared in the evidence before the arbitrators; nor did they offer to prove that the plaintiff was never insane.

The presiding judge, being of opinion, that the compromise and settlement, in the absence of all fraud, on the part of the plaintiff's guardian, in making the same, was conclusive upon the defendant, Billings; and being also of opinion, that the additional facts above mentioned, if proved, would not, when taken in connection with the facts first stated by the defendants and agreed to by the plaintiff, and in the absence of fraud, on the part of the guardian, in making the compromise and settlement, constitute a defence to the action, ruled that the evidence offered by the defendants, under the circumstances and qualifications stated, was inadmissible.

A verdict was thereupon taken in favor of the plaintiff, for the amount due on the note, and the defendants alleged exceptions.

*C. P. Huntington,* for the defendants.

*R. A. Chapman,* for the plaintiff.

WILDE, J.   The general question to be decided in this case is, whether the note in suit is valid, or whether it was obtained by deception and false pretenses.   The note was given in pursuance of a compromise and settlement of two actions, brought by the plaintiff against the principal defendant, Billings, to recover certain real estates alleged to have been conveyed to him by the plaintiff while the plaintiff was insane.   When this settlement and compromise were made, the plaintiff was under guardianship, and the same were agreed to by the defendant, Billings, and the guardian, without any intervention of the plaintiff.   And it is admitted, that no fraud is to be imputed to the guardian, and that he did not participate in, or have any knowledge of, the alleged fraudulent conduct of the plaintiff.   But it is argued, that, as the settlement and compromise were made in his name and for his benefit, the case is to be considered substantially as if they had been made by him personally.

The question is, whether the facts offered to be proved by the defendants are sufficient to avoid the compromise as a fraudulent act.

It is not alleged, that the deceptive conduct of the plaintiff was intended by him to induce the defendant to agree to a compromise.   One of the actions thus settled had been before tried, and a verdict thereon returned in the plaintiff's favor on the ground that he was insane when he made the deed of conveyance to the defendant, Billings.   A new trial was granted on a question of law, and afterwards this and the other action against Billings were referred, by a rule of court, and a hearing of the two cases was commenced before the arbitrators, when a compromise was suggested by one of them, and it was thereupon agreed to by the parties.   In these proceedings, no deception was practised by any one;

and the terms of the compromise appear to be fair and equitable. These terms were all complied with by the parties, and the note in suit was given for the balance found due to the plaintiff.

To set aside a settlement thus fairly made, the defendant is bound to prove, by strong if not conclusive evidence, that the conveyance to him by the plaintiff was a valid conveyance, and that the settlement, if suffered to stand, would deprive him of his just rights; and we think no such evidence was offered by the defendant. The evidence, which he moved to introduce at the trial, tended to prove that the plaintiff had, before and after the conveyance, feigned insanity, with the view and purpose, that such feigned conduct should be used on the trial of the actions brought by him for the recovery of the lands conveyed; and that the evidence of such conduct was introduced at the first trial. But that might be, although the plaintiff was actually insane when he made the conveyance. The defendant did not offer to prove that the plaintiff had never been insane, or that he was not insane when he made the conveyance; and if he was then insane, the conveyance might be avoided, although the plaintiff might, in a lucid interval, improperly practise deception for the purpose of avoiding the conveyance. But if the defendant could prove that the plaintiff was sane when he made the conveyance, it would not follow, that the conveyance was valid. The plaintiff contended, at the first trial, that the deed was obtained from him by undue influence and fraud. What the evidence on that point was, we are not informed; the evidence not having been reported. But on both points we consider the defendant's claim of title to the lands in question as doubtful; and in such a case we think the law to be well established, by the cases cited, that a compromise and settlement fairly made, of a doubtful claim, are binding on the parties, and are not to be opened to further controversy. In this case it is admitted that the settlement and compromise were fairly made by the plaintiff's guardian, and without any intervention of the plaintiff. It is therefore

binding on both parties. *Chit. Con.* (5th Am. ed.) 43, 44. *Hoge* v. *Hoge*, 1 Watts, 163, 216, 217; *Taylor* v. *Patrick*, 1 Bibb, 168; *Fisher* v. *May*, 2 Bibb, 448; *O'Keson* v. *Barclay*, 2 Pennsyl. 531; *Barlow* v. *Ocean Ins. Co.* 4 Met. 270.

In the case of *Russell* v. *Cook*, 3 Hill, 504, it was decided, that a note, given upon a settlement of a doubtful claim preferred against the maker, was given on a good consideration, without regard to the legal validity of the claim. In such cases, it is said, it matters not on which side the right ultimately turns out to be; the court will not look behind the compromise. So, in *Longridge* v. *Dorville*, 5 Barn. & Ald. 117, it was decided, that the giving up of a suit, instituted to try a question, respecting which the law was doubtful, was a good consideration for a promise to pay a stipulated sum; although the law might have been made certain by the decision of the court. It was held, that the compromise was an implied waiver of all questions of law and fact.

The principle established by these decisions, and by the other authorities above cited, fully maintains this action. We consider the compromise and settlement as having been fairly made, and on terms sufficiently favorable to the defendant. The titles in question were doubtful. But the presumption was in favor of the plaintiff's title, as he had recovered a verdict in the first action. The terms of the compromise were complied with by the parties. The plaintiff discontinued his two actions, relinquished his claim for costs, and confirmed the title of the grantees, to whom the defendant had conveyed a portion of the lands; and if this compromise should be set aside, and the door of litigation opened, the plaintiff might be much prejudiced. The additional evidence fails to prove that the plaintiff's claim was groundless. The most it proves is, that the claim was doubtful. It does not appear, therefore, that justice requires the compromise to be set aside. But according to the principle established by the authorities cited, we should not be authorized to set aside the compromise, if the defendant could now prove that the conveyance from the plaintiff to him was valid, and that the plaintiff's

claim was groundless. The principle is founded on public policy, to prevent litigation, and on the rule of law, that a contract fairly made, on a good consideration, is a valid con‑ tract. And such we consider the note sued in the present case. *Exceptions overruled.*